IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION


TOPS SALES & SERVICES, INC.         :
d/b/a TOPS SHOWBAR, and THE A       :
GROUP, INC.,                        :
                                    :
      Plaintiffs,                 :     CIVIL ACTION NO.
                                    :     1:09-cv-0442-RWS
v.                                  :
                                    :
CITY OF FOREST PARK, et al.,        :
     Defendants.                  :
                                    :

## ORDER

This case comes before the Court on Defendants' RenewedMotion to

Dismiss [59] and Plaintiffs' Motion to Amend [67].  After a review of the

record, the Court enters the following Order.

**I. Factual Background**

Plaintiffs Tops Sales and Services, Inc. d/b/a Tops Showbar ("Tops") and

The A Group, Inc. ("The A Group")  filed this action challenging various

ordinances of the City of Forest Park ("City") as they relate to the regulation of

adult entertainment establishments, specifically, an adult entertainment business

that Tops seeks to open in the City.  Additionally, Plaintiffs have brought

claims against the Mayor–Corine Deyton, City Manager–John Parker, Chief of

Police–Dwayne Hobbes, and Councilpersons–Deborah Youmans, Sparkle

Adams, Linda Lord, and Maudie McCord.

Tops currently leases property located at 3950 Jonesboro Road in the

City of Forest Park (the "3950 Property")  from The A Group. Compl., Dkt. No.

[1] at 7.  Plaintiff contends that The A Group was issued a special permit in

1993 allowing the property to be used as an adult entertainment establishment.

Id. at 6.   The previous tenant, Red Eyed, Inc. ("REI"), operated an adult

entertainment establishment on the property from 1993 to 2008 under a valid

license issued by the City.  Id. at 5.  Anticipating REI's departure from the

property, Tops entered into a lease agreement with The A Group in 2008 to

lease the property for use as an adult entertainment establishment.  Id. at 7.  In

March 2008,  Tops submitted a complete adult entertainment and alcohol

license application to the City for The A Group property.  In June 2008, while

still a tenant at The A Group property,  REI filed an application with the City

for an adult entertainment and alcohol license for 3920 Jonesboro Road ("3920

Property"), a property adjacent to the A Group property. Id.  This application

was made at the time the 1997 Adult Entertainment Ordinance ("1997

2

Ordinance") was in effect.  Tops alleges that in August 2008, the City enacted

two resolutions favoring REI and approved the request for transfer of the

location of its license premises to 3920 Jonesboro Road. Id. at 8.  Shortly

following this approval, in September 2008, the City enacted a 180-day

moratorium on the issuance of adult entertainment licenses. Id. at 9.  Tops

contends that its adult entertainment application was improperly tabled pursuant

to the moratorium enacted in 2009. Id. at 8. Further, Plaintiffs claim that, in

violation of due process, the City has failed to state a reason for its denial of the

alcohol license application. Id. at 15. Since Plaintiffs submitted their 1997

Ordinance application, the City has amended its adult entertainment ordinance

twice; once in 2009 ("2009 Ordinance") and once in 2010 ("2010 Ordinance").

However, Plaintiffs have not filed applications under either ordinance.

Tops originally filed this action against the City alone. See Cmpl., Dkt.

No. [1].  However, prior to this Court ruling on the City's Motion to Dismiss,

Tops moved for leave of court to amend its complaint and to add The A Group

as a party-plaintiff and the aforementioned individual defendants as parties-

defendant.  This Court granted leave. Dkt. No. [57].

3

Plaintiffs' Amended Complaint challenges the constitutionality of the following City of Forest Park actions: (1) the Adult Entertainment Ordinance, § 9-12-4 (Counts I, II, III, IV, V); (2) the Alcohol Code, § 9-2-4 (Count XI, XII, XVI; (3) the refusal by the City to recognize the "grandfathered status" of The A Group property (Counts XIII, XIV); and (4) the 180-day moratorium (Count XV). Further, Tops contends that the failure by the City to provide ascertainable standards and a reasoned basis for the denial of the alcohol license constitutes a violation of O.C.G.A. § 3-3-2 and established state law (Counts VII, XVII). Additionally, Plaintiffs challenge Defendants action as an inverse condemnation under the U.S. and Georgia Constitutions (Count VIII) as well as an intentional infliction of economic harm (Count IX). Plaintiffs also request a declaratory judgment, injunction, and attorney's fees (Counts V, VI, X).

Defendants have now renewed their motion to dismiss. Subsequently, Plaintiffs filed another Motion to Amend to add additional facts to the Amended Complaint and to add new allegations regarding the 2010 Ordinance. The Court will consider each motion in turn.

AO 72A
(Rev.8/82)

**II. Discussion**

<u>A. Motion to Amend</u>

Plaintiffs first seek leave of Court to amend their Amended Complaint. <u>See</u> Dkt. No. [67]. Plaintiffs' proposed Second Amended Complaint seeks to supplement the earlier amended complaint to include additional facts and to provide additional challenges to the City's 2010 Adult Entertainment Ordinance. However, this Court's August 19, 2009 scheduling order limited the amendment period to 30 days after the Order, or September 18, 2009.

When a motion to amend is filed after a scheduling order deadline, Federal Rule of Civil Procedure 16 is the proper guide for determining whether a party's delay may be excused. <u>S. Grouts & Mortars, Inc. v. 3M Co.</u>, 575 F.3d 1235, 1241(11th Cir. 2009) (<u>citing</u> <u>Sosa v. Airprint Sys.</u>, 133 F.3d 1417, 1418 n.2 (11th Cir. 1998)). A scheduling order may be modified only for good cause and with the Court's consent. FED. R. CIV. P. 16(b)(4). The key to good cause is diligence. <u>Sosa</u>, 133 F.3d at 1419.

The Eleventh Circuit has found three factors which warrant consideration when evaluating diligence: "(1) [whether] the plaintiff failed to ascertain facts prior to filing the complaint and to acquire information during the discovery

5

period; (2) [whether] the information supporting the proposed amendment was available to the plaintiff; and (3) even after acquiring information, [whether] the plaintiff delayed in asking for amendment." Auto-Owners Ins. Co. v. Ace Elec. Serv., Inc., 648 F. Supp. 2d 1371, 1375 (M.D. Fla. 2009) (citations omitted).

Additionally, if Plaintiffs survive the Rule 16(b)(4) challenge, they still must satisfy Federal Rule of Civil Procedure 15. Rule 15 directs the Court to "freely give leave when justice so requires." FED. R. CIV. P. 15(a)(2).  Despite an instruction that leave should be freely given when justice so requires, leave to amend is "by no means automatic."  Layfield v. Bill Heard Chevrolet Co., 607 F.2d 1097, 1099 (5th Cir. 1979). The trial court has "extensive discretion" in deciding whether to grant leave to amend. Campbell v. Emory Clinic, 166 F.3d 1157, 1162 (11th Cir. 1999). A trial court may choose not to allow a party to amend "when the amendment would prejudice the defendant, follows undue delays or is futile." Id. A claim is futile if it cannot withstand a motion to dismiss. Fla. Power & Light Co. v. Allis Chalmers Corp., 85 F.3d 1514, 1520 (11th Cir. 1996); see Burger King Corp. v. Weaver, 169 F.3d 1310, 1315 (11th Cir. 1999) (futility is another way of saying "inadequacy as a matter of law").

6

### 1. Additional Facts Outside of the 2010 Ordinance

Plaintiffs' motion to add additional facts pertaining to its Amended Complaint must fail.  Under Rule 16(b)(4), Plaintiffs do not have good cause because all of the facts which Plaintiffs seek to add were known to them at the time of the Amended Complaint filing.  This knowledge, coupled with the prejudice which the Defendants would experience in having to draft a third lengthy motion to dismiss, does not warrant an amendment in this case.  This is not a scenario where facts were hidden or unknown–Plaintiffs simply failed to include them in their Amended Complaint.  Therefore, Plaintiffs' non-2010 Ordinance factual allegations are improper and are not accepted.

### 2. Claims on the 2010 Ordinance

Unlike the facts which relate to Plaintiffs' former claims, Plaintiffs' 2010 Amendment claims were not fully known to the Plaintiffs at the time of the Amended Complaint as that ordinance did not go into effect until March 8, 2010.  Therefore, Plaintiffs do have "good cause" to bring the amendment under the scheduling order.  However, the key issue here is futility under Rule 15.

Defendants argue that Plaintiffs' claims are futile because Plaintiffs do not have standing to challenge the 2010 Ordinance.  Namely, they argue that

because Plaintiffs have not filed for a license under the ordinance and are not actively violating the ordinance through their conduct, Plaintiffs cannot challenge the ordinance. Additionally, they argue that even if Plaintiffs had filed for a license, they would not be injured because the license would be denied pursuant to the 1500 foot distance requirement. As Plaintiffs have not challenged this requirement in the proposed Second Amended Complaint, Defendants argue that the Plaintiffs could not be injured.

Article III of the United States Constitution limits the subject matter jurisdiction of federal courts to "Cases" and "Controversies." U.S. Const. art. III, § 2. As a part of the requirement, the United States Supreme Court has made clear that "standing is an essential and unchanging part of the case-or-controversy requirement of Article III." Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992). Standing requires the Plaintiffs to prove: (1) an injury in fact which is (a) "concrete and particularized," and (b) "actual or imminent, not conjectural or hypothetical;" (2) a causal connection between the injury and the conduct complained of; and (3) that it is "likely, as opposed to merely speculative that the injury will be redressed by a favorable decision." Id. at 560-61 (internal quotations omitted). "Since [standing requirements] are not mere

pleading requirements but rather an indispensable part of the plaintiff's case, each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, *i.e.*, with the manner and degree of evidence required at the successive stages of the litigation." Id. at 561.

Plaintiffs argue that "Tops had a vested right to consideration of its application for an alcohol and adult entertainment license under the Ordinance in effect at the time of submission" and direct the Court to their Response to Defendants' First Motion to Dismiss [22] for their support of standing. Dkt. No. [74] at 7. However, Plaintiffs seem to misconstrue a mootness exception as a standing exception. In fact, Plaintiffs never even cite the common law standing requirements or argue how they have satisfied them.

Georgia law does not recognize a vested right in alcohol and adult entertainment licenses. Goldrush II v. City of Marietta, 482 S.E.2d 347, 360-61 (Ga. 1997). In Goldrush II, the Georgia Supreme Court ruled that while parties can obtain vested rights in zoning laws, they cannot with business licenses–specifically alcohol and adult entertainment licenses. Id. "Those who hold licenses that expire annually act at their peril and assume the risk that their licenses might not be renewed notwithstanding they have committed their lives

9

and their capital to building their businesses which need licenses to operate." Id. (quoting Ficarra v. Dep't of Reg. Agencies, 849 P.2d 6, 18 (Colo. 1993) (internal quotations omitted)).  Rather, the only right which applicants obtain is the right to have their application determined under the law which existed at the time of the application–a right which does not relate to the 2010 Ordinance because Plaintiffs have not filed a 2010 application. See Recycle & Recover v. Ga. Bd. of Nat. Resources, 466 S.E.2d 197 (Ga. 1996).

Regardless of any "vested right," however,  Plaintiffs cannot prove standing.  First, Plaintiffs cannot prove an as-applied, injury-in-fact.  It is undisputed that Plaintiffs have taken no action under the 2010 Ordinance and are not currently running an adult entertainment establishment at their intended location.  In Action Outdoor Adver. II, LLC v. Lumpkin Cnty., Fla., 543 F. Supp. 2d 1334, 1343 (N.D. Ga. 2008), the Court found that because the plaintiff never applied for a permit under the ordinance and because he had never "personally attempted to engage in any conduct that the ordinance prohibited," the plaintiff did not suffer an actual or threatened injury under the at-issue ordinance.  Here, Plaintiffs have not applied for a license nor have they opened an adult entertainment establishment in contravention of the Ordinance.

Additionally, even if they filed an application that application would be denied on grounds which the Plaintiffs have not challenged. Therefore, Plaintiffs are not injured.

Additionally, this is not a scenario in which the Supreme Court has recognized a facial challenge without having to first apply and be denied a permit. See City of Lakewood v. Plain Dealer Pub. Co., 486 U.S. 750 (1988). In City of Lakewood, the Supreme Court held that when a licensing statute "allegedly vests unbridled discretion in a government official over whether to permit or deny expressive activity, one who is subject to the law may challenge it facially without the necessity of first applying for, and being denied, a license." Id. at 755-56.  Here, the 2010 Ordinance sets out clear standards for approval, including the 1500 foot distance requirement. Because the Ordinance sets out "express standards," a facial challenge is not appropriate.

Moreover, Plaintiffs cannot prove redressability.  In Lockridge v. City of Oldsmar, 273 Fed. App'x 786, 788 (11th Cir. 2008), a plaintiff challenged several sections of a sign ordinance and argued for invalidation of the entire statute.  However, the plaintiff failed to challenge the sign height and size requirements which were independent grounds for the City to deny the

11

plaintiff's application.  The court ruled that because the invalidation of the challenged section would not redress the plaintiff's injury–in that the City could deny on the separate, alternative ground–the plaintiff did not have standing.

This case is like Lockridge.  Plaintiffs have not challenged the constitutionality of the 1500 foot distance requirement; rather, they argue that had their application been approved at the time of filing, it would not have mattered.  Dkt. No. [74] at 10, ¶ 7. However, they do not dispute that, in 2010, their application would be denied because their location is within 1500 feet of another adult entertainment establishment.  Because invalidation of Plaintiffs' challenged provisions would not prevent the Defendants from denying on an unchallenged ground, Plaintiffs also lack redressability and therefore standing. Moreover, because Plaintiffs have not established constitutional standing, any overbroad challenge is improper. See CAMP Legal Defense Fund, Inc. v. City of Atlanta, 451 F.3d 1257, 1270 (11th Cir. 2006).

Because Plaintiffs' additional factual claims were known at the time of the Amended Complaint and because Plaintiffs' amendment of the 2010 Ordinance is futile, Plaintiffs' Motion to Amend [67] is denied.

B. Motion to Dismiss

Because the Court has denied Plaintiffs' Motion to Amend, the Court will now consider Defendants' Renewed Motion to Dismiss.

### 1. Legal Standard

When considering a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a federal court is to accept as true "all facts set forth in the plaintiff's complaint." Grossman v. Nationsbank, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000) (citation omitted). Further, the court must draw all reasonable inferences in the light most favorable to the plaintiff. Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1273 n.1 (11th Cir. 1999); see also Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-56 (2007) (internal citations omitted). However, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" Id.

The United States Supreme Court has dispensed with the rule that a complaint may only be dismissed under Rule 12(b)(6) when "'it appears beyond

AO 72A
(Rev.8/82)

doubt that the plaintiff can prove  no set of facts in support of his claim which

would entitle him to relief.'"  <u>Twombly</u>, 127 U.S. at 561(quoting <u>Conley v.</u>

<u>Gibson</u>, 355 U.S. 41, 45-46 (1957)).  The Supreme Court has replaced that rule

with the "plausibility standard," which requires that factual allegations "raise

the right to relief above the speculative level."  <u>Id.</u> at 556.  The plausibility

standard "does not[, however,] impose a probability requirement at the pleading

stage; it simply calls for enough facts to raise a reasonable expectation that

discovery will reveal evidence [supporting the claim]." <u>Id.</u>

### 2. Unopposed Counts and Abandoned Claims

As a preliminary matter, Plaintiffs have failed to respond to a number of

Defendants' grounds for dismissal.  The Court will treat these claims as

unopposed.  <u>See</u> L.R. 7.1(B), NDGa ("Failure to file a response shall indicate

that there is no opposition to the motion.").  Specifically, as to all Defendants,

Plaintiffs have not responded to Defendants' arguments regarding Plaintiffs': 1)

various substantive due process claims (Counts II (substantive due process

only), XII, XVI); 2) declaratory judgment action (Count X); 3) intentional

infliction of economic harm (Count IX); and 4) the duplicative and unnecessary

nature of a separate count for Plaintiffs' alleged "grandfather status" (Counts

14

XIII, XIV).  Additionally, Plaintiffs have failed to address the following

arguments regarding the individual defendants: 1) that the official capacity

claims are redundant since the City was sued directly; 2) no facts were plead

regarding the Police Chief and Mayor;[1] and 3) qualified immunity to federal

claims.  The Court has reviewed the record and finds that the Defendants'

Motion to Dismiss as to these claims is proper.  Therefore, the foregoing claims

are **DISMISSED**, and no counts remain against the Mayor, Corine Deyton, or

the Police Chief, Dwayne Hobbs. Additionally, no federal claims remain

against any individual defendant.

Defendants also state that Plaintiffs have not opposed the individual

defendants' statutory immunity and legislative immunity to state law claims.

However, Plaintiffs make arguments which go to the "willful and wanton"

nature of the individual defendants' actions, a predicate of proving both types of

immunity. For instance, Plaintiffs allege that Defendants based REI's priority

status on a "transfer application" which they knew did not exist. Pl.'s Br., Dkt.

---

[1]Defendants also claim that Plaintiffs did not allege any facts concerning John Parker, the City Manager.  However, Plaintiffs did so in paragraphs 19-20 of the Original Complaint which is incorporated by reference in the Amended Complaint. See Amended Cmpl., Dkt. No. [37] at ¶ 33.

No. [66] at 22. Therefore, whether or not meritorious, Plaintiffs did not abandon their challenge to the individual defendants' state law immunity claims.

Additionally, Defendants argue that the Plaintiffs have abandoned their facial challenges to the 1997 and 2009 Ordinances because they stated they are not "alleging harm because Defendants enacted an ordinance." Dkt. No. [66] at 22.   However, taken in context, it appears Plaintiffs argue that they are not basing their claims on the physical act of passing the ordinance; rather, they are attacking the alleged conspiracy behind doing so and the actual ordinances which resulted.  Therefore, the Court does not consider Plaintiffs' facial challenges as abandoned.

### 3. Adult Entertainment Ordinance Challenges

Defendants argue that Plaintiffs' 1997 and 2009 Adult Entertainment Ordinance challenges are moot because the City has adopted a new ordinance. "Ordinarily, 'a challenge to the constitutionality of a statute is mooted by repeal of the statute.'" Tanner Adver. Grp., LLC v. Fayette Cnty., Ga., 451 F.3d 777, 785 (11th Cir. 2006) (quoting Coral Springs St. Sys., Inc. v. City of Sunrise, 371 F.3d 1320, 1329 (11th Cir. 2004)). However, Plaintiffs have alleged five defenses to mootness: 1) voluntary cessation; 2) vested rights; 3) damages; 4)

16

legal non-conforming use; and 5) reliance on the City's assurances.  The Court

will consider each in turn.

a. Voluntary Cessation

First, Plaintiffs argue that Defendants' voluntary cessation of the

improper conduct does not moot their claims because the Defendants "continue

to pursue the unconstitutional practices that Tops is challenging." <u>See</u> Pl.'s

Resp. to Def.'s MTD, Dkt. No. [22] at 5.[2]  Voluntary cessation of a challenged

state practice may "moot" a claimant's grievance, and deprive a court of

jurisdiction, only where "(1) 'there is no reasonable expectation that the alleged

violation will recur,' and (2) 'interim relief or events have completely and

irrevocably eradicated the effects of the alleged violation.'" <u>Seay Outdoor

Adver., Inc. v. City of Mary Esther</u>, 397 F.3d 943, 947 (11th Cir. 2005)

(<u>quoting</u> <u>Cnty. of Los Angeles v. Davis</u>, 440 U.S. 625, 631 (1979)).  In contrast,

"[t]o the extent th[e challenged] features remain in place, and changes in the

law have not so fundamentally altered the [applicable] framework as to render

_____

[2]Plaintiffs have incorporated by reference their mootness arguments from their
response to Defendants' original motion to dismiss. <u>See</u> Pl.'s Resp. to Def.'s RMTD, Dkt.
No. [66] at 8 ("In addition to the arguments presented in Plaintiff's Initial Response . .
.).

17

the original controversy a mere abstraction, the case is not moot." <u>Coal. for the Abolition for Marijuana Prohibition v. City of Atlanta</u>, 219 F.3d 1301, 1310 (11th Cir. 2000) (<u>quoting Naturist Soc'y, Inc. v. Fillyaw</u>, 958 F.2d 1515, 1520 (11th Cir. 1992)).

"'However, governmental entities and officials have been given considerably more leeway than private parties in the presumption that they are unlikely to resume illegal activities.'" <u>Seay</u>, 397 F.3d  at 947 (<u>quoting</u> <u>Coral Springs</u>, 371 F.3d at 1328-29).  In fact, in the governmental context, the Supreme Court has stated that voluntary cessation will only survive an ordinance challenge if "the law is reasonably likely to be reenacted or when it is replaced by another constitutionally suspect law." <u>Seay</u>, 397 F.3d at 947.

First, Plaintiffs have not plead facts that the 1997 Ordinance will be reenacted nor that the 1997 Ordinance has been replaced by an unconstitutional ordinance.  Because the 2010 Ordinance is now in effect, the Court–out of fairness to the Plaintiffs–has considered the allegations in the Second Amended Complaint to determine if the 2010 Ordinance is unconstitutional as alleged. Even taking the allegations as true, Plaintiffs have not stated a claim for unconstitutionality. While the Plaintiffs did challenge the constitutionality of

18

the 2009 Ordinance by essentially challenging the "secondary effects analysis" of the Council, Plaintiffs do not make the same challenges to the 2010 Ordinance.  Namely, they state "[t]he 2010 Ordinance contained restrictions virtually identical to those contained in the 2009 Ordinance, and therefore it suffers from the same infirmities as the 2009 Ordinance." 2d Amend. Cmpl., Dkt. No. [67-1] at ¶ 146.  However, just because the Council allegedly did not consider secondary effects in 2009 does not *ipso facto* mean they did not in 2010.  Therefore, Plaintiffs have not mounted a constitutional challenge to the 2010 Ordinance, even in their Second Amended Complaint.  As a result, Defendants' voluntary cessation of the 1997 Ordinance moots Plaintiffs' claims.

### b. Vested Rights

Plaintiffs next argue that their claims are not moot because they have a vested right in having their license approved under the law that existed at the time of their application.  Whether a right is vested is a question of state law. Crown Media LLC v. Gwinnett Cnty., 380 F.3d 1317, 1325 (11th Cir. 2004). In Georgia, the only vested right which attaches to alcohol and adult entertainment licenses is the right to have the application adjudged according to

19

the law which existed at the time of the application.  See Goldrush II, 482

S.E.2d at 361 (finding that no vested right exists generally with alcohol and

adult entertainment licenses and citing with approval Recycle & Recover which

held that filing a "'then proper' application gives the applicant a vested right to

issuance of the permit under the law that existed at the time of the

application.'").

     First, it should be noted that the City did eventually reject Plaintiffs'

application under the 1997 Ordinance in May 2009 citing distance violations.

See 2d Am. Cmpl., Dkt. No. [67-1] at ¶¶ 105-10.  However, Plaintiffs argue that

their application was proper at the time that it was filed and that no distance

requirement was applicable to them because at the time of application, REI had

not yet moved next door.  However, that argument does not comport with the

1997 Ordinance.  Under the 1997 Ordinance, adult entertainment licenses were

issued for one calendar year.  1997 Ord., Dkt. No. [67-3] at § 9-12-8.

Therefore, because REI had a license for the 3950 Property for the 2008

calendar year, that license would not expire until December 31, 2008.

     Moreover, the City could not have issued a license to Plaintiffs in

anticipation of REI moving because 1) REI still held a valid license until

20

December 31st, and 2) it is impermissible under the ordinance to "establish" two adult entertainment businesses at the same location. See id. at § 9-12-12. "The starting point in statutory interpretation  is 'the language [of the ordinance] itself.' " Ardestani v. I.N.S., 502 U.S. 129, 135 (1991) (quoting United States v. James, 478 U.S. 597, 604 (1986)). Plaintiffs argue that the phrase "causes or permits the operation, establishment, or maintenance of more than one sexually oriented business" most appropriately means "run" two businesses at the same location–not license two businesses at the same location. Pl.'s Opp. Br., Dkt. No. [66] at 11.  However, that interpretation is in conflict with the plain and ordinary meaning of "establish."  The American Heritage College Dictionary defines "establish" as "to set up; found" or "to bring about; generate." AMERICAN HERITAGE COLLEGE DICTIONARY 489 (3d ed. 2000). Clearly obtaining a license for the purpose of running an adult entertainment business is "setting up" the future business–not just running it.  Therefore, under the law in existence at the time of the application, the City could not have issued Plaintiffs a license until REI's license was terminated at that location.

Additionally, the Plaintiffs argue that because they filed their application first, they should have been given priority over REI's application to move next

door once REI asked to terminate its 3950 Property license.  However, the City

essentially granted REI's application as a transfer application–approving the

termination of the 3950 Property license simultaneously with the approval of

the 3920 Property license.

Plaintiffs argue that under the 1997 Ordinance transfer applications were

unlawful.  This is not so.  The 1997 Ordinance bars two types of

transfers–transferring a current license to another person or using the approved

license at a non-approved address. 1997 Ord., Dkt. No. [67-2] at § 9-12-11.

Nothing prevents the City from giving that approval to a new address; the only

thing that is prevented is using the license at a non-approved location.

Therefore, following the approval of REI's transfer application, Plaintiffs'

application was ripe for review because there was no longer a current license at

the 3950 location.  However, that application was invalid because it violated the

1500 foot distance requirement.  Therefore, Plaintiffs have no vested rights

which will prevent their claims from becoming moot.  See Tanner, 451 F.3d at

788 (holding that parties do not have vested rights in applications which fail to

comply with the underlying ordinance).

### c. Damages

Plaintiffs next claim that their claims are not moot because they are seeking damages.  However, "[a] request for damages that is barred as a matter of law cannot save a case from mootness." Id. at 786 (citing Arizonans for Official English v. Arizona, 520 U.S. 43, 1069-70 (1997).  Here, as seen above, Plaintiffs' rights were not violated under the 1997 Ordinance because their application violated the 1500 foot distance requirement when it was proper to rule on the application.  Therefore, their application was essentially void and Plaintiffs do not have a redressable injury.  Additionally, Plaintiffs do not have standing under the 2009 or 2010 Ordinances as they did not file applications under those ordinances or challenge those ordinances' distance requirements.  See Section II (2), supra (outlining Plaintiffs' standing issues with an ordinance they have applied under and the 1500 foot requirement they have not challenged). Therefore, Plaintiffs' claim for damages will not prevent their claims from becoming moot.

### d. Legal Non-conforming Use

Plaintiffs additionally argue that under zoning code § 8-3-31(e)(5) they are entitled to continue a legal non-conforming use.  Therefore, they argue, their

AO 72A
(Rev.8/82)

claims should not be moot.  However, Plaintiffs misconstrue a zoning exception

with the licensing exception.  The Georgia courts have made clear that zoning is

fundamentally different from licensing.  <u>Goldrush II</u>, 482 S.E.2d at 698.

Whether the Plaintiffs have a vested right as a nonconforming use in no way

alters the City's obligations under the licensing ordinance.  <u>Id.</u>  Therefore,

Plaintiffs' zoning variance will not save its claims under the adult entertainment

ordinances.

e. Reliance on City Official's representations

Plaintiffs finally argue that they relied on the City's assurances that

they would be able to open an adult entertainment business at the 3950

Property.  In support of their contentions, the Plaintiffs direct this Court to

<u>Barker v. County of Forsyth</u>, 281 S.E.2d 549 (1981).  In <u>Barker</u>, the Georgia

Supreme Court held that a party obtains vested rights in a building permit when

that party relies on the assurances of the governmental authority that the permit

will be issued.  <u>Id.</u>  Essentially, Plaintiffs have repackaged their vested rights

argument as an estoppel argument.  However, in <u>Goldrush II</u>, the Georgia

Supreme Court ruled parties do not obtain vested rights in alcohol and adult

entertainment licenses.  <u>Goldrush II</u>, 482 S.E.2d at 698.  In fact, parties who

24

*already* have an adult entertainment or alcohol license and have invested large sums of money in that livelihood do not obtain a vested right in its renewal. Goldrush II, 482 S.E.2d at 698.  Clearly, the lesser case of obtaining an initial license does not create a vested right.  Therefore, all of Plaintiffs' challenges to the adult entertainment ordinances (Counts I, II, III, IV, V) are **DISMISSED** as non-justiciable.

### 4. Moratorium Challenges

Defendants additionally argue that Plaintiffs' challenges to its moratorium are moot.  This Court agrees.  As seen above, this Court finds that Plaintiffs' application was not proper because of the 1500 foot requirement. Therefore, even if Defendants mistakenly applied the moratorium to Plaintiffs' application it had no effect because the application was void *ab initio*. Further, Plaintiffs have not alleged any specific harm which resulted in the delay–especially since they were not entitled to a license from the start. This claim (Count XV) is moot and must be **DISMISSED**.

### 5. Alcohol Ordinance

Plaintiffs have challenged the City's alcohol code as an as-applied violation of equal protection.[3]  The Equal Protection Clause of the Fourteenth Amendment states that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection  of the laws." U.S. CONST. amend. XIV, § 1. However, this is not a classic equal protection case. Plaintiffs do not claim that they were discriminated against because they belong to a protected class such as race or gender. Rather, Plaintiffs' claim is based upon the "class of one" theory. This theory was first recognized by the Supreme Court in Village of Willowbrook v. Olech, 528 U.S. 562 (2000) (per curiam). In order for Plaintiffs to successfully assert a class-of-one  claim, they must demonstrate that: (1) they "ha[ve] been intentionally treated differently from others similarly situated;" and (2) "there is no rational basis for the difference in treatment." Id. at 564. With respect to proving a comparator, the Court is "obliged to apply the 'similarly situated' requirement with rigor." Griffin Indus., Inc. v. Irvin, 496 F.3d 1189, 1207 (11th Cir. 2007) (complaint failed to state class-of-one  claim

---

[3]Plaintiffs' additional challenges to the alcohol ordinance have already been dismissed as unopposed.  See Section II(B)(2), supra.

26

because plaintiff did not plead an adequate comparator); <u>see also</u>  <u>Douglas</u>

<u>Asphalt Co. v. Qore, Inc.</u>, 541 F.3d 1269, 1275 (same).

Here, Plaintiffs have not adequately plead a similarly situated

comparator.  Plaintiffs even allege that REI was treated as a "transfer

application" under the alcohol ordinance, thereby acknowledging that REI was

not similarly situated. Cmpl., Dkt. No. [1] at ¶ 26. Further, the alcohol

ordinance affirmatively allowed transfer applications so this disparate treatment

was rational. <u>See</u> Dkt. No. [2-12] at 1. Therefore, Plaintiffs' equal protection

claim (Count XI) fails to state a claim and will be **DISMISSED**.

### 6. Condemnation

Plaintiffs also contends that Defendants' license application denials

constitute a regulatory taking in violation of the U.S. and Georgia Constitutions.

Plaintiffs claim that Defendants' actions constituted inverse condemnation of its

property, and it is entitled to just compensation. However, because Plaintiffs

have not pursued their state remedies, the Court finds that it does not have

jurisdiction of these claims because they are not ripe.

A regulation "restricting the use of property may in some limited

circumstances amount to a taking." <u>Rymer v. Douglas Cnty.</u>, 764 F.2d 796, 800

AO 72A
(Rev.8/82)

(11th Cir. 1985). To show a constitutional violation, a plaintiff must prove that the challenged regulation denied the property owner of any viable economic use of the property. Id.; see also Lucas v. S.C. Coastal Council, 505 U.S. 1003, 1015 (1992). "In other words, the governmental action must have made the property worthless." Agripost, Inc. v. Miami-Dade County ex rel. Manager, 195 F.3d 1225, 1231(11th Cir. 1999). In addition, a property owner must show either that state law provides no process for obtaining just compensation, or that state law is inadequate due to state court interpretation. Id. If the plaintiff cannot show either of these requirements, the case is not ripe and the court lacks subject matter jurisdiction over the claim. Id.  In Georgia, state law provides a process for obtaining just compensation for takings resulting from land use decisions: claimants may bring an action for inverse condemnation. James Emory, Inc. v. Twiggs Cnty., 883 F. Supp. 1546, 1556 (M.D. Ga. 1995); Benton v. Savannah Airport Comm'n , 525 S.E.2d 383, 386 (Ga. Ct. App. 1995). Thus, where a plaintiff has not availed itself of the state-law process, takings and inverse condemnation claims are not ripe for federal court review. Eide v. Sarasota Cnty., 908 F.2d 716, 720-21 (11th Cir. 1990).

Here, Plaintiffs have not alleged that they have sought just compensation under the statute.  Rather, Plaintiffs argue that they could not have sought such compensation because their application was left pending for fourteen months.  However, that delay is irrelevant to the taking claim because Plaintiffs did obtain a decision to appeal.  The inquiry here is whether Plaintiffs have exhausted their state law remedies.  As they have not, and have not plead that those possible remedies are insufficient, Plaintiffs' condemnation claim is not ripe.

Moreover, Plaintiffs have not plead sufficient facts that they have been denied all economically viable use of the property.  Plaintiffs' argument that the location has always been an adult entertainment facility does not support a conclusion that the property could not be used for other purposes.  Further, Plaintiffs do not have a vested right to an adult entertainment license as they again allege.  Therefore, for all these reasons Plaintiffs' condemnation action (Count VIII) is **DISMISSED**.

### 7. Individual Defendants

Plaintiffs' additionally claim that the individual defendants are liable for violations of Article 1, Section 1, Paragraphs 1, 2 and 5 of the Georgia

29

Constitution pursuant to O.C.G.A. § 36-33-4. In response, the individual

defendants have raised official immunity, legislative immunity, and statutory

immunity.

O.C.G.A. § 36-33-4 states that municipal officers "shall be personally

liable to one who sustains special damages as the result of any official act of

such officers if done oppressively, maliciously, corruptly, or without authority

of law." An official function is "any act performed within the officer's or

employee's scope of authority, including both ministerial and discretionary

acts." Gilbert v. Richardson, 452 S.E.2d 476, 483 (Ga. 1994). This means that

an officer may be personally liable if he performs his ministerial duties with

negligence, actual malice, or intent to injure. Cameron v. Lang, 549 S.E.2d 341,

345 (Ga. 2001). But an officer may only be liable for the performance of the

discretionary acts if he acts with malice or intent to injure. Id.

"A ministerial act is commonly one that is simple, absolute, and definite,

arising under conditions admitted or proved to exist, and requiring merely the

execution of a specific duty. A discretionary act, however, calls for the exercise

of personal deliberation and judgment, which in turn entails examining the

facts, reaching reasoned conclusions, and acting on them in a way not

specifically directed." Johnson v. Gonzalez, 478 S.E.2d 410, 411-12 (Ga. Ct. App. 1996). The individual defendants' conduct in reviewing and denying Plaintiffs' license applications was clearly discretionary. See Workman v. City of New York, 179 U.S. 552, 583 (1900) (holding that a passing an ordinance is a discretionary action because it is, by its nature, legislative). Therefore, Plaintiffs' claims can only stand if they have plead sufficient facts to demonstrate that it is plausible the individual defendants acted with actual malice.

There is no such allegation in the record before the Court. The conclusory allegations in Plaintiffs' complaint do not meet the plausibility standard laid out above. In fact, Plaintiffs' pleadings do not provide support for the contention that the individual defendants acted intentionally or maliciously in denying Plaintiffs' licenses. Nothing in Plaintiff's Amended Complaint, even liberally construed, would suggest that the individual defendants were doing anything but performing their duties as city officers–whether as City Manager or Councilperson. An allegation that the parties were in a conspiracy without more is not sufficient. See Cmpl., Dkt. No. [20] at ¶ 52; Amend. Cmpl., Dkt. No. [37] at ¶¶ 23-24 (alleging that the parties "conspired" or "colluded"). In fact, the

31

only mention of John Parker in the pleading is a statement that he is, and was, the City Manager and that he witnessed the City state that The A Group had obtained grandfathering status in its special use and zoning permits–nothing regarding his intentional actions toward the Plaintiffs. Cmpl., Dkt. No. [20] at ¶¶ 19-20.  Moreover, the only actions which the Plaintiffs allege as to the individual councilpersons are their actions in passing the ordinances and denying their permits–nothing regarding their intent to specifically injure the Plaintiffs. Id. at ¶¶ 26, 29, 31, 39, 57; Amend. Cmpl., Dkt. No. [37] at ¶¶ 14, 15. Absent pleadings alleging specific malicious or intentional conduct, Plaintiffs' Amended Complaint fails to set forth a claim upon which relief can be granted. For these reasons, all state law claims against the individual defendants (Counts VII, XVII) are hereby **DISMISSED** .

### 8. Count XVII as applied to the City

While Defendants did address this Count as applied to the individual defendants, Defendants have not directly addressed Plaintiffs' allegations of a "violation of state law" by the City.  Therefore, this Court will not review the substance of that motion but, in noting that all federal causes of actions have been dismissed in this suit, this Court will decline to exercise subject matter

AO 72A
(Rev.8/82)

jurisdiction over this state law claim. See, e.g. Bagget v. First Nat'l Bank of Gainesville, 117 F.3d 1342, 1353 (11th Cir. 1997) (explaining "state law claims . . . are best resolved by the Georgia courts . . . especially . . . where the Court is dismissing Plaintiffs' federal law claim prior to trial"). Therefore, Count XVII as applied to the City is **DISMISSED, without prejudice**.

## III. Conclusion

Plaintiffs' Motion to Amend [67] is **DENIED** and Defendants' Motion to Dismiss [59] is **GRANTED, in part.** Having dismissed all federal causes of action, this Court declines subject matter jurisdiction over the pending state law claim against the City.  The Clerk is directed to close this case.

**SO ORDERED** this   7th   day of December, 2010.


**RICHARD W. STORY**
United States District Judge

33